IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TERRY L. MILLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:14-cv-2796-M |
| | § | |
| MEGAN J. BRENNAN, Current | § | |
| Postmaster General of the U.S. Postal | § | |
| Service, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendant Patrick R. Donahoe, Postmaster General of the United States Postal Service, now substituted as the official-capacity defendant in this case with Megan J. Brennan, Current Postmaster General of the United States Postal Service ("Defendant" or "USPS"), filed a Motion to Amend Admission [Dkt. No. 34], seeking an order permitting Defendant to amend its response to Plaintiff Terry L. Miller's Request for Admission No. 14 under Federal Rule of Civil Procedure 36(b). United States District Judge Barbara M.G. Lynn referred the motion to the undersigned United States magistrate judge for determination. *See* Dkt. No. 35. Plaintiff has responded, *see* Dkt. No. 39, and Defendant filed a reply, *see* Dkt. No. 42.

For the reasons explained below, the Court GRANTS Defendant's Motion to Amend Admission [Dkt. No. 34].

## Background

Plaintiff, the postmaster of the Melissa, Texas post office, filed this action,

alleging that two selecting officials discriminated against her when they did not select her for the position of Manager of EEO Compliance and Appeals (Region) that was vacant in 2011 (the first vacancy) and again in 2013 (the second vacancy). *See* Dkt. No. 1. Plaintiff's complaint sets forth eight claims for relief arising from the two non-selections. *See id.* A ninth claim for relief for retaliation for actions after the non-selections was dismissed without prejudice. *See* Dkt. Nos. 32 & 33.

During fact discovery, which closed on November 3, 2015, Plaintiff served Requests for Admissions. *See* Dkt. No. 40 at 1-8. Request for Admission No. 14 asked Defendant to admit or deny that "[a] review committee was not used in the selection process for the review of applicants for the position at issue in the Second Non-Selection Case." *Id.* at 7. On May 12, 2015, Defendant responded that "Defendant admits that a review committee was not used in the selection process for the review of applicants for the position at issue in the Second Non-Selection Case." *Id.* at 14.

Plaintiff then deposed the selecting official for the second vacancy, Tracy Wattree-Bond, on September 29, 2015. According to Defendant, "[s]urprising counsel for the [USPS], Ms. Wattree-Bond testified that she in fact used a review committee to review the applications, and the review committee provided her with the top candidates to interview for the [2013] vacancy, which included Plaintiff." Dkt. No. 34 at 3 (citing Dkt. No. 34-1 at App'x 005). Defendant therefore "moves to amend its response to Request for Admission No. 14 to proffer the correct response, indicating that Ms. Wattree-Bond used a review committee for the [2013] vacancy." *Id.*

The Court has entered an order providing that "[t]he dispositive motion deadline

is hereby extended until ten days after the Magistrate Judge issues a ruling on Defendant's pending Motion to Amend Admission. With the exception of the March 21, 2016 trial setting, the remaining unexpired deadlines in this case are stayed until the new dispositive motion deadline is established." Dkt. No. 38 at 1.

## Legal Standards

Under Federal Rule of Civil Procedure 36, "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of [Federal Rule of Civil Procedure] 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." FED. R. CIV. P. 36(a)(1). "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." FED. R. CIV. P. 36(b). "In form and substance a Rule 36 admission is comparable to an admission in pleadings or a stipulation drafted by counsel for use at trial, rather than to an evidentiary admission of a party. An admission that is not withdrawn or amended cannot be rebutted by contrary testimony or ignored by the district court simply because it finds the evidence presented by the party against whom the admission operates more credible. This conclusive effect applies equally to those admissions made affirmatively and those established by default, even if the matters admitted relate to material facts that defeat a party's claim." *Am. Auto. Ass'n, Inc. v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1120 (5th Cir. 1991) (internal quotation marks and footnotes omitted).

"The binding nature of judicial admissions conserves judicial resources by

-3-

avoiding the need for disputatious discovery on every conceivable question of fact. Once a fact is formally admitted and thereby set aside in the discovery process, the party requesting an admission is entitled to rely on the conclusiveness of it." *Armour v. Knowles*, 512 F.3d 147, 154 n.13 (5th Cir. 2007) (internal quotation marks omitted). "Unless the party securing an admission can depend on its binding effect, he cannot safely avoid the expense of preparing to prove the very matters on which he has secured the admission, and the purpose of the rule is defeated." *Am. Auto. Ass'n*, 930 F.2d at 1121 (internal quotation marks omitted).

Rule 36(b) provides that, "[s]ubject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." FED. R. CIV. P. 36(b); *see also* FED. R. CIV. P. 16(e) ("The court may hold a final pretrial conference to formulate a trial plan, including a plan to facilitate the admission of evidence. The conference must be held as close to the start of trial as is reasonable, and must be attended by at least one attorney who will conduct the trial for each party and by any unrepresented party. The court may modify the order issued after a final pretrial conference only to prevent manifest injustice."); *Am. Auto. Ass'n*, 930 F.2d at 1120 ("Once trial has begun, the provisions of F.R.C.P. 16(e), expressly incorporated by Rule 36(b), impose a more restrictive standard: the court will not permit withdrawal or amendment of an admission unless failure to do so would cause 'manifest injustice.'" (footnote omitted)).

"Rule 36(b) 'places a burden on both the party who makes the admission and the

party who obtains the admission. The party making the admission must show that the presentation of the merits will be subserved. The party obtaining the admission must satisfy the court that the withdrawal or amendment of the admission will prejudice him.'" *Curtis v. State Farm Lloyds*, Civ. A. No. H-03-1025, 2004 WL 1621700, at *4 (S.D. Tex. Apr. 29, 2004) (quoting *Coca-Cola Bottling Co. v. Coca-Cola Co.*, 123 F.R.D. 97, 102 (D. Del.1988)).

As to the first prong of the test, "it is proper to consider whether denying [amendment] would have the practical effect of eliminating any presentation of the merits of the case in determining whether Rule 36(b)'s first requirement is met." *Le v. Cheesecake Factory Rests. Inc.*, No. 06-20006, 2007 WL 715260, at *2 (5th Cir. Mar. 6, 2007). Courts have found Rule 36(b)'s first prong satisfied where admissions "directly bear on the merits of the case," *S.E.C. v. AmeriFirst Funding, Inc.*, No. 3:07-cv-1188-D, 2008 WL 2073498, at *2 (N.D. Tex. May 13, 2008), and "upholding the admissions would practically eliminate any presentation of the merits of the case," *Curtis*, 2004 WL 1621700, at *5.

But the United States Court of Appeals for the Fifth Circuit "and other courts have not relied solely on this factor in determining whether to permit withdrawal. Even where the presentation of the merits of a case would be eliminated, other factors considered are whether the plaintiff has demonstrated that the merits would be served by advancing evidence showing the admission is contrary to the record of the case, or that the admission is no longer true because of changed circumstances or [that] through an honest error a party has made an improvident admission." *Le*, 2007 WL

715260, at *2 (internal quotation marks omitted). Thus, "[c]ourts have permitted the withdrawal of deemed admissions when confronted with contrary factual information, unless the circumstances of the case have made it inappropriate or inequitable to do so." *Curtis*, 2004 WL 1621700, at *5. The Fifth Circuit has also held that a court acts within its discretion in considering the fault of the party seeking withdrawal or amendment, *see Pickens v. Equitable Life Assurance Soc'y*, 413 F.2d 1390, 1394 (5th Cir. 1969), or its diligence in seeking withdrawal or amendment, *see Covarrubias v. Five Unknown INS/Border Patrol Agents*, 192 F. App'x 247, 248 (5th Cir. 2006) (per curiam); *accord Le*, 2007 WL 715260, at *2.

As to the second, prejudice prong of the Rule 36(b) standard, "[t]hat it would be necessary for a party to prove a fact that it would not otherwise be obligated to prove if the matter were deemed admitted does not constitute the kind of prejudice contemplated by Rule 36(b)." *AmeriFirst Funding*, 2008 WL 2073498, at *2. Rather, "[c]ourts have usually found that the prejudice contemplated by Rule 36(b) relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission." *Am. Auto. Ass'n*, 930 F.2d at 1120; *see also Thanedar v. Time Warner, Inc.*, 352 F. App'x 891, 896 (5th Cir. 2009) ("Prejudice may occur where a party faces special difficulties ... caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission. However, [t]he necessity of having to convince a trier of fact of the truth of a matter erroneously admitted is not sufficient." (internal quotation marks and citations omitted)). Prejudice for Rule 36(b)'s purposes thus does not occur simply because the requesting party will no longer be able

to conclusively rely on the erroneous admission of inaccurate information. *See Thanedar*, 352 F. App'x at 896-97. But prejudice may be shown from the stage of the proceedings at which the moving party seeks to amend its admission. *See id.* at 897. Thus, courts have considered, "within the prejudice analysis, the timing of the motion for withdrawal as it relates to the diligence of the party seeking withdrawal and the adequacy of time remaining for additional discovery before trial." *Le*, 2007 WL 715260, at *3; *cf. Am. Auto. Ass'n*, 930 F.2d at 1120 ("The very purpose of Rule 36, however, is to obviate the need to present evidence on a matter that has been admitted. Because the Legal Clinic never moved for withdrawal or amendment of its admissions, AAA received no notice that such evidence might be required."). The Fifth Circuit has opined that a "court may have abused its discretion in denying withdrawal when [the party opposing withdrawal] had almost six months to continue discovery and its prejudice at that point in time consisted largely of the additional expense of discovery." *Id.*

And, "[e]ven when these two factors are established, a district court still has discretion to deny a request for leave to withdraw or amend an admission." *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001). And admissions on file can be an appropriate basis for granting summary judgment. *See id.* at 420.

## Analysis

### The Parties' Contentions

Defendant seeks to amend its admission to Request for Admission ("RFA") No. 14 where "[a]llowing the amendment would promote the presentation of the merits of the action because the fact that Ms. Wattree-Bond used a review committee to provide

her with a list of candidates is highly relevant to Plaintiff's discrimination claims against Ms. Wattree-Bond." Dkt. No. 34 at 3.

Defendant explains that "[t]he USPS conducted two internal investigations of Plaintiff's complaints regarding the [2011] and [2013] vacancies"; that "[t]hese internal investigations did not include evidence that either selecting official used a review committee to review the applications before the selecting official considered the candidates"; that, "[b]ased upon Defendant's further investigation of the claims in this litigation and production of documents pursuant to Plaintiff's discovery requests, Defendant understood that the selecting officials did not utilize a review committee to review applications for the [2011] or [2013] Vacancies"; that Ms. Wattree-Bond's deposition testimony on September 29, 2015 was therefore a surprise to Defendant's counsel; and that, allowing Defendant to "amend its response to Request for Admission No. 14 to proffer the correct response, indicating that Ms. Wattree-Bond used a review committee for the [2013] vacancy" would not prejudice "Plaintiff, who learned of the review committee at the same time as counsel for Defendant" and who "examined Ms. Wattree-Bond, the selecting official, about her use of that review committee during the September 29, 2015 deposition." *Id.* at 2-3.

Defendant further notes that "Ms. Wattree-Bond identified the review committee members, William Coutu, Susan Johnson, and David Plybon, providing Plaintiff with an opportunity to seek discovery regarding the review committee during the remainder of the discovery period," where all fact discovery was ordered to be completed by November 3, 2015. *Id.* at 3; *see also* Dkt. No. 31 at 2.

Plaintiff opposes the requested Rule 36(b) amendment to Defendant's response to RFA No. 14, noting that Defendant's motion "fails to provide a statement or text of what the proposed amended response would be" and arguing that "[p]ermitting the government to amend its response to RFA 14 at this stage in the litigation does not serve the interests of justice" and that, "based on the facts and circumstances of this litigation and, in light of the prejudice to plaintiff, the presentation of the merits, and the discretion accorded to the Court under Rule 36," the Court should deny the motion. Dkt. No. 39 at 4, 22.

Plaintiff observed that Defendant's response admitting RFA No. 14 was made in May 2015 and that this motion comes after the close of fact discovery, which ended on November 3, 2015 and assets that the fact that the motion relates to a single admission belies its significance. *See id.* at 1. Plaintiff opposes the motion on the grounds that (1) the motion, if granted, would severely prejudice Plaintiff in the preparation and presentation of her case; (2) the motion, if granted, it would not serve the presentation of the case on its merits; and (3) the Court should, in any event, exercise its discretion to deny the motion as both defendant and its counsel unduly delayed in seeking withdrawal of the admission to the prejudice of Plaintiff's preparation of her case. *See id.* Plaintiff further asserts that, after Defendant served its response to RFA No. 14 on May 12, 2015, Plaintiff "served additional discovery and notice of depositions to be taken in Washington, DC, where the alleged responsible officials have their offices," and that her "selection of deponents was in part based on and made in reliance on the admission to Request for Admission No. 14." *Id.* at 4.

Plaintiff contends that Defendant's "admission amounts the conclusive establishment of the fact that the defendant violated a material regulation governing the selection process by which it denied plaintiff's selection to the EEO Regional Manager position she applied for in 2013." *Id.* at 1-2. Plaintiff explains further that "during the two selection processes at issue there were serious violations of the Postal Service selection process regulations governing each EEO Manager Position selection"; that "those regulations required for each selection process the preparation of an official record titled 'Requirement by Applicant Matrix'"; that "[t]his Matrix is required to be prepared for all applicants – without exception"; that "[i]t is mandatory that a Matrix be prepared by either the selecting official or reviewing officials in a designated committee"; that, "[i]n both selections at issue, the selecting official failed to prepare any Matrix at all"; that "[t]hat failure would only be excused if reviewing officials in a review committee had properly prepared a Matrix"; and that "[t]he admission that a review committee was not used, combined with the undisputed (and also admitted) fact that the selecting official did not prepare a Matrix, constituted proof that the regulation requiring the Matrix was in fact violated." *Id.* at 5-6 (emphasis removed).

Plaintiff asserts that, during the Postal Service's EEO investigation of plaintiff's 2013 complaint, Ms. Wattree-Bond signed an affidavit that suggested that she did not use reviewing officials or a committee of reviewing officials in connection with the 2013 non-selection and that "[n]owhere in the entire administrative record and the administrative Record of Investigation for the 2013 non-selection is there any mention of any reviewing officials or any committee of them, or of any Matrix." *Id.* at 9-10.

Plaintiff argues that Defendant's motion's suggestion that "Ms. Wattree-Bond, or anyone else at the Postal Service, never told counsel before September 29, 2015, about her contention that a review committee was used is astonishing." *Id.* at 12. Plaintiff contends that "[t]his means for at least twenty months, while this claim was litigated first administratively and then in this civil action, the defendant did not tell its counsel about the now-claimed use of reviewing officials. That delay and lack of diligence cannot be blamed on defendant's counsel – they asked and were not told. That delay can only be charged to the party defendant itself." *Id.*

Plaintiff's response focuses on Ms. Wattree-Bond's deposition testimony that she that she has faith that the review committee for the 2013 selection completed a matrix as required and on the fact that no such matrix was previously produced in discovery. *See id.* at 14-15. Plaintiff further notes that, in her September 30, 2015 deposition testimony, Eloise Lance. Ms. Wattree-Bond's boss and the higher level concurring official for the 2013 non-selection, testified "that she recalled seeing a copy of a Matrix in a package she submitted at some unstated time to 'attorneys' handling the case, but did not know if it was submitted to 'shared services.'" *Id.* at 15 (quoting Dkt. No. 40 at App'x 96-97). Plaintiff explains that her counsel, "after hearing the surprise testimony of September 29 and 30, 2015, ... "immediately on October 1 propounded further sets of requests for admission and document requests seeking, inter alia, production of the Matrix Ms. Wattree-Bond claimed was created by the three newly identified reviewing officials, as well as any documents reflecting the work of a review committee on the 2013 selection process." *Id.* Plaintiff reports that Defendant produced on November 3,

2015, the last day for fact discovery, "one page of a partially legible copy of a matrix document." *Id.* at 16.

Turning to the Rule 36(b) considerations, Plaintiff explains that Defendant's counsel "did not inform [Plaintiff's counsel] of her desire to [move for amendment] until November 2 when she emailed [Plaintiff's counsel] asking if he would oppose a motion to amend"; that, until then, Plaintiff's counsel "believed Ms. Wattree-Bond was either mistaken or not being truthful in her deposition about a Matrix done by a review committee" where she "had never seen that Matrix and did not use it"; and that Plaintiff's counsel "assumed the existing admissions had resolved the matter," "[s]o defendant's motion was the real surprise." *Id.* at 16.

Plaintiff notes that Defendant offers no reason in its motion for not filing a motion before November 5, 2015, which Plaintiff contends "is clearly a lack of diligence," and asserts that, "[r]egardless, that delay deprived plaintiff of the ability to conduct any discovery relative to the claimed Matrix produced or respecting the amendment of the admission." *Id.* at 16-17.

Plaintiff argues that the "motion does not say what the amendment would be, i.e. a complete denial, a partial denial, and/or an objection," and that, "[i]n the context of the issues to be tried, the amendment, if granted, would mean the previously established failure of defendant to do the Matrix for the 2013 non-selection was no longer established." *Id.* at 17. Plaintiff asserts that "[h]ad the new information and questioned document upon which the motion is based been timely disclosed by the party defendant to the AUSAs it would have been disclosed by defendant in its initial

Rule 26 disclosures that were served on November 7, 2014"; that "[i]f disclosed by defendant to the AUSAs it would have been disclosed in May 2015 when defendant responded to plaintiff's first set of discovery requests"; that "[t]he information and questioned document now disclosed puts a burden on plaintiff to prepare and present her case anew with respect to the 2013 non-selection"; that, "to do so, a substantial amount of discovery and investigation is required of plaintiff" but "discovery is over"; and that, "[i]f the motion is granted, then plaintiff would have no viable option but to seek that discovery." *Id.*

Plaintiff further explains:

> The following reviewing official depositions would be necessary: Reviewing official William Cantu, reviewing official Susan Johnson, and reviewing official David Plybon. Each would need to be examined about whether they actually prepared the questioned document, whether they intended it to be included in the official records and if so, why they did not do so, who they communicated with and when, and why they made the claimed entries and based on what information about the applicants. We would also need production of all documents provided to and reviewed by these officials.
>
> We are informed that in 2013, Mr. Cantu was in Connecticut, Ms. Johnson was in the San Francisco Bay area, and Mr. Plybon was in the Dallas area. So the depositions would be far-flung and require extensive travel. We do not know if today each is still a Postal Service employee, has retired, or has moved. If no longer federal employees each would need to be tracked down and subpoenaed.
>
> A deposition for the administrator in charge of the e-Career system in 2013 would also be needed respecting what the official records contain and why the claimed Matrix is not there. In 2013 that administrator was Thomas Bunnell who was deposed about the records for the first non-selection of 2011. At the time he was in Greensboro, South Carolina. We do not know if he is still a Postal Service employee, has retired, or has moved. If no longer a federal employee he would need to be tracked down and subpoenaed.
>
> Obtaining the needed depositions may proof unreasonably difficult and time consuming given the above challenges.

Clearly if the motion is granted, defendant will be required, per its obligation under Rule 26, to supplement prior discovery answers that are no longer accurate due to the amendment of the admission. Those additional responses could lead to a need for additional discovery or even more depositions.

A questioned document expert would need to be consulted about the document, the unclear entries and signatures, and may need to be retained as an expert for dispositive motions and trial. Also, electronic document enhancement may be needed to read it fully.

All this is more than can be reasonably done in time for preparation of plaintiff's response to a defense motion for summary judgment. Assuming the 2013 claim survives summary judgment without plaintiff having the discovery needed, proper preparation of that claim for trial in March 2016 would also be impracticable if not impossible. We thought plaintiff was done with discovery and the preparation of plaintiff's case thus far. The inability to accomplish all that would be needed if the motion is granted prejudices plaintiff's case in a way that is too late to accommodate. Plaintiff's reliance on the admission is lost if the motion is granted.

*Id.* at 17-18.

Plaintiff also contends that Defendant's admissions to Plaintiff's RFA Nos. 3, 4, 5, and 14 "conclusively established that the Matrix was required, it was not prepared by the selecting official or anyone else, and that no committee of reviewing officials was used." *Id.* at 19 (emphasis removed). Plaintiff contends that Defendant now "seeks, at this late date, to erase and re-set all of that with a new set of claimed facts which, if believed, could absolve the selecting official of any failure to prepare the required Matrix"; that "[t]he established violation of the Postal Service's own regulations by a highly placed EEO executive who knew better was a key part of plaintiff's proof of discriminatory intent and pretext for the 2013 non-selection"; and that, "if the motion to amend is granted, that would undo plaintiff's entire proof of the violation respecting the 2013 non-selection," whereas, "[w]ith the admission, plaintiff was relieved of any

-14-

burden to prove otherwise." *Id.* Plaintiff also appears to assert that further delay in the case will burden Plaintiff with a further delay in prevailing and receiving a monetary award. *See id.* at 19-20.

In reply, Defendant explains that "Plaintiff opposes the amendment, arguing (1) Defendant was not diligent in seeking the amendment (Response at 22); (2) Plaintiff relies on the admission to show that Wattree-Bond violated policy by failing to prepare a matrix (Response at 17-19); and (3) Plaintiff challenges the authenticity of the review committee matrix that Defendant timely produced (Response at 14-16)"; that, "[i]f the amendment is granted, Plaintiff contends she needs additional discovery regarding whether committee members prepared the matrix, who they communicated with, and why they rated the applicants as they did"; and that Defendant disagrees with Plaintiff's objections." Dkt. No. 42 at 2.

Defendant reports that the USPS "did not realize Wattree-Bond used a review committee" and that "Plaintiff did not depose Wattree-Bond during the administrative process" and asserts that "[a]ny oversight in investigating the claim was based upon an inadvertent but understandable mistake that how Wattree-Bond obtained the list was not relevant, not bad faith or other culpable conduct." *Id.* at 3. Defendant further explains that, "[d]espite Defendant's diligent efforts to investigate Plaintiff's claims and produce responsive discovery, Defendant and its counsel were unaware that Wattree-Bond utilized a review committee (RC) until she was deposed on September 29, 2015," where she "testified she did not create a matrix because she used a review committee, and she believed the review committee created a matrix" and that "the RC

forwarded the top five names to her but she did not see the matrix or receive any information regarding how the RC rated the candidates." *Id.* at 4.

Defendant explains that, "[w]hile preparing responses to Plaintiff's October 1, [2015] discovery requests related to the newly-discovered review committee, Defendant and its counsel realized that Admission No. 14, served on May 12, 2015, was incorrect" and, "[t]hus, on November 2, 2015, the same day Defendant's discovery was due and timely served, Defendant advised Plaintiff that it would move to amend the admission"; that "Defendant hand-delivered the matrix to Plaintiff the next day at her deposition, the last day of discovery"; that, "[t]wo days later, Plaintiff advised that she would oppose the motion to amend"; and that "Defendant diligently moved to amend the admission as soon as practicable after learning that the admission was incorrect." *Id.* at 4-5.

Defendant contends that, where Ms. "Wattree-Bond testified that she used a RC and the RC prepared a matrix," "Defendant's incorrect admission that Wattree-Bond did not use a RC is contrary to the record of the case." *Id.* at 5. Defendant explains that, "[i]f Wattree-Bond used a review committee, then the review committee is required to prepare a matrix rating all of the applicants"; "[i]f Wattree-Bond did not use a review committee, Wattree-Bond, as the selecting official, is required to prepare a matrix"; and "[t]hat Wattree-Bond used a review committee shows Wattree-Bond did not violate Postal Service policy when she did not prepare a matrix." *Id.* at 5 n.7. Defendant contends that, "[h]aving learned that Wattree-Bond used a RC and the RC prepared a matrix, the matrix itself bears directly on the issues in the case." *Id.* at 7.

According to Defendant, "Wattree-Bond did not see the matrix, so the matrix is not probative of her assessment of the candidates or any discriminatory or retaliatory intent toward Plaintiff," but "Plaintiff seeks to prove that Wattree-Bond's reason for selecting another candidate is a pretext for discrimination because Plaintiff was 'clearly better qualified' than Slye," and "[t]herefore, the matrix is highly relevant as an objective and independent assessment of the candidates' relative strengths and weaknesses based solely on the applications submitted by the candidates." *Id.* at 5-6 (emphasis removed). "Defendant seeks to amend its admission that Wattree-Bond did not use a RC because her use of a RC (and its matrix) bears directly on the issues in the case and is contrary to the factual record." *Id.* at 6.

Defendant further replies that "Plaintiff is not prejudiced by allowing the amendment because the use of the RC does not assist Plaintiff in proving her discrimination claims." *Id.* Defendant claims that "[w]hether Wattree-Bond used a RC and/or prepared a matrix is not evidence that Wattree-Bond discriminated against Plaintiff, even if Wattree-Bond violated Postal Service policy," citing cases that hold that "disregard of its own hiring system does not of itself conclusively establish that improper discrimination occurred or that a non-discriminatory explanation for an action is pretextual" and that "failure to follow policy not probative of discriminatory animus if no proof plaintiff treated differently than other non-minority employees." *Id.* at 7 (internal quotation marks omitted). Defendant asserts that "Defendant's admission that Wattree-Bond did not use a RC, triggering her obligation to prepare a matrix, is not probative of whether Wattree-Bond discriminated against Plaintiff." *Id.*

(emphasis removed). And Defendant contends that, in any event, under Rule 36(b), "[r]elieving Plaintiff of her burden of proving that Wattree-Bond 'violated Postal Service policy' does not constitute prejudice." *Id.*

Defendant further asserts that "there is no surprise that Defendant takes a contrary position with regard to Wattree-Bond's using a RC because (a) Plaintiff has known since September 29, 2015 that Wattree-Bond used a review committee; (b) Defendant timely produced a matrix in response to Plaintiff's request for the RC matrix during discovery, and (c) Defendant moved to amend its admission to the contrary." *Id.* at 7-8. According to Defendant, "[w]hile Plaintiff would like to have known that Wattree-Bond used a review committee sooner, this fact was discovered during the discovery period as contemplated by the Federal Rules of Civil Procedure." *Id.* at 8.

And Defendant asserts that "Plaintiff also cannot show that she is prejudiced because she has a sudden need to obtain evidence if the Court permits Defendant to withdraw the amendment." *Id.* Defendant notes that "Plaintiff seeks additional discovery regarding the RC's preparation of the matrix, including who they communicated with and why they rated the candidates as they did," and that "Plaintiff challenges the authenticity of the matrix, alleging she needs to consult a document expert and perhaps retain an expert," but Defendant contends that "[t]here is no need to reopen discovery because the admission concerns whether Wattree-Bond used a RC," and, "[n]otably, Plaintiff does not challenge the existence or use of the RC, the subject of the admission." *Id.* (emphasis removed). "Defendant contends discovery regarding

the existence or use of the RC is irrelevant and not proportional to the needs of the case." *Id.* (emphasis removed).

According to Defendant, "[w]hat Plaintiff, in truth, appears to be challenging is the contents of the matrix," where, "Plaintiff, having seen the matrix, now understands its contents (the RC ratings) undercut her claim that she is clearly better qualified than Slye." *Id.* at 9. "Defendant acknowledges the matrix was inadvertently produced at the close of discovery. However, Defendant opposes additional discovery because the ratings are not evidence that Wattree-Bond intentionally discriminated against Plaintiff." *Id.* Defendant explains that, "[i]f, for example, Plaintiff could show, through discovery, that the RC was completely wrong and should have rated Plaintiff first, ahead of Slye, that evidence does not translate to Wattree-Bond," and "Plaintiff does not explain how and why the RC's ratings create a genuine issue of material fact that Wattree-Bond intentionally discriminated against Plaintiff." *Id.* (emphasis removed). Defendant asserts that "the matrix, even if it undercuts Plaintiff's claim, does not alter Plaintiff's burden to prove that Wattree-Bond intentionally discriminated against her." *Id.* "Defendant contends no further discovery is warranted, even if the matrix was produced at the end of discovery, because it is not evidence of Wattree-Bond's discriminatory intent. Defendant, however, is not trying to be unreasonable, and if discovery is warranted, merely requests that the discovery be narrowly-tailored." *Id.* at 10.

But, Defendant contends, "[t]he issue before the Court is whether Defendant may amend its admission to show that Wattree-Bond used a RC" and, "[b]ecause

Defendant's failure to discover Wattree-Bond's use of a RC until September 2015 was inadvertent, and the current admission is contrary to the record and bears directly on the issues, Defendant requests that the Court grant its motion to amend the admission that Wattree-Bond did not use a RC." *Id.*

Defendant Has Shown that Amendment Would Promote the Presentation of the Merits

Defendant is correct that the issue before the Court is only whether Defendant may, under Rule 36(b), amend its admission stating that a review committee was not used in the selection process for the review of applicants for the position at issue as to the 2013 non-selection. And the Court concludes that Defendant's proposed amendment to its response to RFA No. 14 would promote the presentation of the merits of this action, including as to whether Ms. Wattree-Bond intentionally discriminated against Plaintiff in connection with the 2013 non-selection.

There is no dispute between the parties that whether a review committee was used directly bears on the merits of Plaintiff's case and that Defendant's admission to RFA No. 14 is contrary to the record that has developed through Ms. Wattree-Bond's deposition testimony.

Plaintiff takes issue with the USPS itself and Ms. Wattree-Bond for failing to reveal the existence of the committee until late into the fact discovery period and contends that the circumstances of the case make it inappropriate or inequitable to allow Defendant to now amend its admission. But the record before the Court does not support a finding that the USPS was dishonest or acted improperly in failing to reveal this fact sooner during discovery and does not controvert Defendant's explanation for

its counsel's failure to discover this fact sooner.

Neither does the delay between the September 29, 2015 deposition and the November 5, 2015 motion filing match the kind of record of delay or lack of diligence that have, in other cases, merited a finding that Rule 36(b)'s first prong is not satisfied. *See, e.g.*, *Covarrubias*, 192 F. App'x at 248; *Curtis*, 2004 WL 1621700, at *6.

<u>Plaintiff Has Not Shown the Prejudice that Rule 36(b) Requires</u>

As to prejudice, Plaintiff's need to now either prove either that Ms. Wattree-Bond did not in fact use a review committee or otherwise prove intentional discrimination or pretext is not, by itself, the kind of prejudice that Rule 36(b) contemplates.

The issue, rather, is whether denying Plaintiff the benefit of Defendant's admission "that a review committee was not used in the selection process for the review of applicants for the position at issue in the Second Non-Selection Case," Dkt. No. 40 at 14, poses, at this stage of the case, special difficulties caused by a sudden need to obtain evidence upon permitting this amendment.

Fact discovery is closed, and the Court's most recent order does hold the March 21, 2016 trial setting. *See* Dkt. No. 38 at 1. And the practical effect of permitting the amendment is to permit evidence at summary judgment and trial that a review committee was used and that the committee used a matrix as the regulations require. But Plaintiff already pursued some discovery on those matters immediately after the September 29 and 30, 2015 depositions. And that Defendant produced a copy of a matrix on the last day of the fact discovery period does not bear directly on whether

Defendant should be allowed to amend its response to RFA No. 14, which pertains only to whether a review committee was used.

Plaintiff asserts that she will require four additional depositions – including of three review committee members that Ms. Wattree-Bond identified on September 29, 2015 while fact discovery was open – and possibly an additional expert witness. Defendant's delay in filing its motion did not, however, stop Plaintiff from seeking discovery that would be relevant if Defendant's response to RFA No. 14 is amended, and Plaintiff in fact has already done so.

Further, the Court has stayed the dispositive motion deadline pending a ruling on this motion, and the trial setting is still more than three months away. This is not a case in which it would be impossible, if the Court were to permit it, to accommodate any necessary additional discovery. Indeed, even Defendant, while primarily opposing any reopened discovery, asserts, in the alternative, that any further discovery, if permitted, should simply be narrowly tailored.

The Court finds that Defendant's requested amendment would not prejudice Plaintiff in the manner that Rule 36(b) contemplates.

Further, the Court does not find, in its discretion, that Defendant's request for leave to amend should be denied after considering all of the circumstances and arguments presented.

## Conclusion

The Court GRANTS Defendant's Motion to Amend Admission [Dkt. No. 34] and ORDERS that Defendant must serve an amended response to Plaintiff's Request for

Admission No. 14 by **December 17, 2015**.

SO ORDERED.

DATED: December 15, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE